# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LBUBS 2004-C6 STOCKDALE OFFICE LIMITED PARTNERSHIP,<br><br>                    Plaintiff,<br><br>          v.<br><br>TERRY L. MORELAND and PEGGY J. MORELAND,<br><br>                    Defendants. | 1:13-CV-00294-LJO-JLT<br><br>**ORDER ON MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS**<br>(Doc. 10) |

### PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters.  Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order.  The parties and counsel are encouraged to contact the offices of United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.  The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to

1  suspension mid-trial to accommodate criminal matters.  Civil trials are no longer reset to a later date if
2  Judge O'Neill is unavailable on the original date set for trial.  Moreover, this Court's Fresno Division
3  randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the
4  nation to serve as visiting judges.  In the absence of Magistrate Judge consent, this action is subject to
5  reassignment to a U.S. District Judge from outside the Eastern District of California.

6  **INTRODUCTION**

7  On February 28, 2013, Plaintiff LBUBS 2004-C6 Stockdale Office Limited Partnership
8  ("LBUBS") brought this action to obtain judgment for the amount of deficiency on a loan guaranteed
9  by Defendants Terry L. Moreland and Peggy J. Moreland ("Morelands").  Before the Court is the
10  Morelands' motion to dismiss or, in the alternative, to stay the action on the basis of the abstention
11  doctrine as outlined in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-
12  21 (1976).  As discussed further below, the Court DENIES the Morelands' motion to dismiss.

13  **BACKGROUND**

14  The current action represents the latest of four lawsuits based on the same loan.

15  On August 2, 2004, UBS Real Estate Investments ("UBS") made a $24 million securitized
16  loan ("the loan") to Stockdale Tower I ("Stockdale Tower").  Doc. 1, ¶ 9.  In connection with the loan,
17  Stockdale Tower executed a deed of trust that encumbered its real property located in Bakersfield
18  ("Bakersfield property").  *Id*. at ¶ 10.  The Morelands were the sole members of Stockdale Tower and
19  also entered into an indemnity and guaranty agreement with UBS.  *Id*. at ¶ 12, Doc. 10, p. 13.

20  In August 2004, UBS transferred and assigned its interest in the loan to LaSalle Bank
21  National Association ("LaSalle Bank").  Doc. 1, ¶ 18.  In December 2009, LNR Partners, LLC
22  ("LNR") became the special servicer for the loan to represent investors who had purchased an interest
23  in securitized loans such as Stockdale Tower's loan.  Doc. 10, p. 7. In May 2010, Bank of America, N.
24  A., LaSalle Bank's successor by merger, transferred and assigned its interest in the loan to LBUBS.
25  Doc. 1, ¶ 19.  The Morelands allege that LBUBS is a wholly owned subsidiary of LNR.  Doc. 10, pp.
26  8-9.

27  After several disputes among Stockdale Tower, the Morelands, and LNR, Stockdale Tower
28  filed for Chapter 11 bankruptcy on November 7, 2011.  Doc. 1, ¶ 23.

On May 23, 2012, LBUBS filed suit against the Morelands in this Court seeking a deficiency judgment on the loan based on the guaranty agreement.  Doc. 10, p. 7.  The Morelands also brought crossclaims against LBUBS and related entities.

On May 31, 2012, Stockdale Tower commenced an action in Kern County Superior Court against LBUBS and other entities for breach of contract and interference with prospective business advantage.  Doc. 10, p. 8.

On September 11, 2012, the Morelands, Stockdale Tower, and LBUBS entered into a discounted payoff agreement ("DPO") whereby LBUBS agreed to accept $20 million as full repayment of the loan from Stockdale Tower by January 9, 2013.  Doc. 1, Exh. 12.  Under the DPO, the parties also agreed to dismiss any pending litigation concerning the loan or the guaranty, including the two above actions.  *Id*.

Stockdale Tower did not obtain a replacement loan and failed to make the discounted payoff of $20 million to LBUBS by the deadline in the DPO.  Doc. 1, ¶ 26.

On January 11, 2013, the Morelands and Stockdale Towers filed an action in Kern County Superior Court against LBUBS, LNR, and related entities for improper interference with Stockdale Tower's ability to obtain a replacement loan to make the DPO payment to LBUBS ("state action").  Doc. 10, Exh. A, B.

On February 1, 2013, LNR foreclosed on and held a trustee's sale of Stockdale Tower's Bakersfield property.  Doc. 1, ¶ 27. LBUBS's winning bid at the trustee's sale for the Bakersfield property was $20 million.  *Id*.

On February 28, 2013, LBUBS brought action in this Court on the basis of diversity jurisdiction against the Morelands seeking a deficiency judgment on the loan based on the guaranty agreement.  Specifically, LBUBS seeks to recover the difference between its winning bid in the trustee sale of the Bakersfield property and the outstanding balance on the loan, plus accrued interest.  The Morelands filed the instant motion to dismiss LBUBS's complaint, or, in the alternative, to stay the proceedings, on the basis of the *Colorado River* abstention doctrine on March 29, 2013.  LBUBS filed an opposition on April 25, 2013, and the Morelands filed a reply on May 2, 2013.

**DISCUSSION**

**Motion to Dismiss**

A.  *Colorado River* **Abstention Doctrine**

"Considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' may counsel granting a stay when there are concurrent state proceedings involving the same matter as in the federal district court." *Intel Corp. v. Advanced Micro Devices, Inc*., 12 F.3d 908, 912 (9th Cir. 1993) (quoting *Colorado River*, 424 U.S. at 817). "The Supreme Court has stressed, however, that the *Colorado River* exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them' is a narrow one." *Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 17 (1983)). "Only exceptional circumstances justify such a stay, and whether these circumstances exist is determined by weighing a complex of factors." *Id*. (citing *Moses H. Cone*, 460 U.S. at 23-26).

Drawing from *Colorado River*, *Moses H. Cone* and subsequent cases, the Ninth Circuit has recognized eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co. Inc. v. Transp. Ins. Co*., 656 F.3d 966, 978-79 (9th Cir. 2011) (footnotes omitted).

"These factors are to be applied in a pragmatic and flexible way, as part of a balancing process  rather than as a mechanical checklist." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co*., 843 F.2d 1253, 1257 (9th Cir. 1988).  Yet, "[a]ny doubt as to whether a factor exists should be resolved against a stay." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

Although a court may either stay or dismiss a case or claims under *Colorado River*, the Ninth Circuit generally requires a stay rather than a dismissal. *R.R. St. & Co*., 656 F.3d at 978 n. 8.

4

**1.     Substantial Doubt that the State Action will Resolve the Guaranty Dispute**

While the *Colorado River* factors are to be applied flexibly, the Ninth Circuit has held that "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002) (quoting *Intel*, 12 F.3d at 913). This is a "significant countervailing consideration that [the Ninth Circuit] find[s] dispositive." *Id.* "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.* (quoting *Intel*, 12 F.3d at 91, *Moses H. Cone*, 460 U.S. at 28). "*If there is any substantial doubt as to this*, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Id.* (emphasis in *Intel*).

In the instant case, LBUBS seeks to enforce the guaranty agreement against the Morelands to obtain a deficiency judgment for the difference between the amount LBUBS paid for the Bakersfield property at the trustee's sale and the amount outstanding on the loan that the Morelands guaranteed, plus accrued interest.

In the state action, the Morelands and Stockdale Tower seek relief for LBUBS' and related entities' wrongful conduct with respect to the DPO. Doc. 10, Exh. B. Specifically, the Morelands and Stockdale Tower allege that LBUBS and related entities disseminated false and misleading information that negatively impacted Stockdale Tower's ability to obtain a replacement loan to make the $20 million discounted payoff to LBUBS by the DPO deadline. *Id.* The Morelands and Stockdale Tower allege that, in so doing, LBUBS and related entities breached the implied covenant of good faith and fair dealing contained in the DPO agreement, committed trade libel against Stockdale Tower, and intentionally interfered with the Morelands' and Stockdale Tower's prospective economic advantages under the DPO. *Id.* The Morelands and Stockdale Tower also seek declaratory relief as to whether the allonges to the deed of trust note complies with relevant requirements. *Id.*

The state action will resolve disputes among the parties under the DPO and determine the validity of the allonges to the deed of trust note. However, the state action does not determine the rights and liabilities of the parties under the guaranty agreement.

As the Morelands point out, the DPO and the guaranty are related agreements. Doc. 10, p.

19.   Under the terms of the DPO, LBUBS agreed to accept a reduced amount as full repayment of the loan and to voluntarily dismiss the first action it filed in this Court seeking a deficiency judgment. Doc. 1, Exh. 12.   In exchange, the Morelands reaffirmed the existing guaranty, executed a new guaranty, and agreed to remain liable under both the existing guaranty and the new guaranty until January 2015.[1]   *Id.*   As such, the state court's determination of whether LBUBS breached the DPO may affect LBUBS's ability to collect the discounted payoff under the DPO and the Morelands' liability for the new guaranty.   However, there is no indication that the existing guaranty would be unenforceable without the Morelands' reaffirmation of it, or that LBUBS's breach of the DPO would invalidate the existing guaranty.   LBUBS brings the federal action to enforce the existing guaranty. Therefore, the state court's finding as to whether LBUBS violated its implied duties under the DPO or tortiously injured the Morelands or Stockdale Tower in connection with the DPO is not dispositive of whether LBUBS may enforce its rights under the existing guaranty agreement against the Morelands.

The Morelands also appear to argue that the state court's finding as to the validity of the allonges attached to the deed of trust note will be dispositive of the instant action because that finding will determine whether LBUBS succeeded to any rights under the loan documents from UBS.   Doc. 10, p. 3, Exh. B.   However, the allonges attached to the deed of trust note are not the only means through which the interest in the loan purportedly has been transferred to LBUBS.   LBUBS appears to have succeeded to its interest in the loan from UBS through a two-step transfer.   First, UBS executed an assignment of deed of trust, an assignment of assignment of leases and rents, and a general assignment to LaSalle Bank.   Doc. 1, Exh. 5-7.   Then, Bank of America, N.A.,   LaSalle Bank's successor by merger, executed an assignment of deed of trust, an assignment of assignment of leases and rents, and an omnibus assignment of loan documents to LBUBS.   Doc. 1, Exh. 8-10.   Therefore, the state court's determination as to the validity of the allonges attached to the deed of trust note alone will not determine whether LBUBS succeeded to any rights under the loan documents from UBS.

For these reasons, the Court finds substantial doubt as to whether the state action will resolve the parties' dispute in the instant action.   *Holder*, 305 F.3d at 868.

---

[1] The terms of the DPO state that the Morelands shall remain liable under the guaranty and the new guaranty for twenty-four months following the closing date.   The parties agreed on a closing date of January 2013, so the Morelands' guaranty liability under the DPO extends to January 2015.

### 2.   Other *Colorado River* Factors

The balance of the remaining *Colorado River* factors also weigh against dismissing or staying this action.

The first two factors are not particularly relevant here.  The dispute involves unpaid sums from a loan, and "money ... is not the sort of tangible physical property referred to in *Colorado River*." *Travelers Indem.*, 914 F.2d at 1368 (quoting *Am. Int'l Underwriters*, 843 F.2d at 1258).  Likewise, while the state forum is in Bakersfield, the federal forum is located in Fresno, approximately one and one-half hours away.[2]

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258.  As discussed above, although the lawsuits involve disputes over related agreements, the state court is not adjudicating the same issues as this Court.  Therefore, this does not "raise a special concern about piecemeal litigation" as required for *Colorado River* abstention.  *R.R. St. & Co.*, 656 F.3d at 979 (quoting *Travelers Indem.*, 914 F.2d at 1369).

While the state action was initiated about six weeks before the instant case, there have been no documents produced, no depositions taken, and no substantive orders issued by the court therein.  Doc. 13, p. 15.  Rather, in the state case, there only has been one hearing, on the demurrer, which was rendered moot by the Morelands' filing of their first amended complaint.  Therefore, the order in which the forums obtained jurisdiction does not weigh heavily in this case.

California law rather than federal law provides the rule of decision on the merits in both the state action and this case.  However, this factor is more important when issues of federal law are present.  *Moses H. Cone*, 460 U.S. at 26.  ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender.").  *See also*, *Cerit v. Cerit*, 188 F.Supp.2d 1239, 1250 (D.Haw. 2002) ("[W]here state law issues predominate, the source of law [factor] is of diminished importance.").  Further, federal courts sitting in diversity are no strangers to applying state substantive law.  *See*, *e.g.*, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

---

[2] The Morelands claim that the federal forum is inconvenient because they would have to travel "two and a half hours" from Bakersfield to Fresno.  Fresno is located approximately one hundred miles north of Bakersfield on highway 99.

Forum shopping refers to "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." *R.R. St. & Co.*, 656 F.3d at 981 (quoting Black's Law Dictionary 726 (9th ed. 2009)).  To avoid forum shopping, courts may consider "the vexatious or reactive nature of either the federal or the state litigation." *Moses H. Cone*, 460 U.S. at 17 n. 20.  The Ninth Circuit has approved *Colorado River* stays or dismissals when it was "readily apparent that the federal plaintiff was engaged in forum shopping." *R.R. St. & Co.*, 656 F.3d at 981 (citing *Nakash*, 882 F.2d at 1417 (finding forum shopping where the plaintiff brought claims in federal court after three and a half years of litigating in state court); *Am. Int'l Underwriters*, 843 F.2d at 1255–56 (finding forum shopping where, after filing in state court, plaintiff brought suit in federal court to avoid the state court's unfavorable evidentiary rules)).  Here, LBUBS first filed suit in this Court to enforce the guaranty after Stockdale Tower entered bankruptcy.  As consideration for the DPO, LBUBS agreed to voluntarily dismiss its guaranty action.  After neither the Morelands nor Stockdale Tower made the discounted payoff to LBUBS as provided for by the DPO, it was entirely proper for LBUBS to bring this guaranty enforcement action again in this Court.  Therefore, this factor does not weigh in favor of a stay or dismissal.

Next, the Court examines whether the state court proceedings can adequately protect the rights of the federal litigants.  "[I]f there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate." *R.R. St. & Co.*, 656 F.3d at 981. *See, Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. 927 (emphasizing that the state court might lack the power to enter the order that the plaintiff was seeking in federal court); *Holder*, 305 F.3d at 869 n. 5 (noting that the state court probably lacked jurisdiction to hear the plaintiff's federal ICARA claim). The cases here only involve "routine issues of state law, such as breach of contract." *R.R. St. & Co.*, 656 F.3d at 980. (internal quotation and citation omitted).  Thus, "there is no question that the state court has authority to address the rights and remedies at issue in this case." *Id.* at 981.  However, "this factor 'is more important when it weighs in favor of federal jurisdiction,'" and the balance of the *Colorado River* factors do not weigh in favor of abstention.[3]  *Id.* (citing *Travelers*, 914 F.2d at 1370).

---

[3] LBUBS also argues that the state court cannot adequately protect LBUBS's rights because the Morelands will demand a jury trial and California courts will not enforce pre-dispute jury trial waivers such as the one contained in the DPO.  The

1       Finally, as discussed above, the state action will not resolve all issues before this Court in the

2  instant case.

3       In sum, most of the *Colorado River* factors weigh against a stay or dismissal.  In particular,

4  the Court notes that the existence of substantial doubt as to whether the state action will resolve the

5  parties' guaranty dispute precludes a *Colorado River* stay.   Therefore, the Morelands' motion to

6  dismiss, or, in the alternative, to stay the proceedings is DENIED.

**CONCLUSION AND ORDER**

       For the reasons discussed above, the Court DENIES without prejudice Defendants Terry L.

Moreland and Peggy J. Moreland's motion to dismiss Plaintiff LBUBS 2005-C6 Stockdale Office

Limited Partnership's complaint, or, in the alternative, to stay the proceedings.

IT IS SO ORDERED.

  Dated:   **May 10, 2013**                         **/s/ Lawrence J. O'Neill**

UNITED STATES DISTRICT JUDGE

---

Court declines to speculate on the parties' future actions and will limit its Order to issues currently before the Court.